## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AMERICAN OVERSIGHT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-2580 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 14, 19 |
| | : | | |
| U.S. POSTAL SERVICE, | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

**DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This case concerns a Freedom of Information Act ("FOIA") request for the work calendar of Postmaster General Louis DeJoy, made by American Oversight, a nonprofit group. After initially contending that the Postmaster General's calendar was a strictly personal record and thus not subject to FOIA, the United States Postal Service ("USPS" or "the agency") eventually produced the requested calendar entries, subject to extensive redactions covering nearly all substantive material. The agency now says it has done all that the law requires. The Court disagrees. USPS's proffered explanations for the claimed exemptions are largely inadequate and provide an insufficient basis for the Court to properly assess if the redactions are appropriate, while one claimed exemption is simply deficient. As a result, the Court finds that as to the majority of issues summary judgment is premature. The Court will direct USPS to supplement its declarations to address the deficiencies identified below. The Court accordingly denies USPS's motion and grants American Oversight's motion in part.

## II. BACKGROUND

Louis DeJoy was appointed Postmaster General in June 2020.  Pl.'s Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. Summ. J. ("Pl.'s Mot.") at 2, ECF No. 19-1.  American Oversight asserts that Mr. DeJoy's tenure at the helm of the Postal Service was contentious from the beginning due to "congressional concerns about his political fundraising history and potential financial conflicts of interest."  *Id.*  This scrutiny became heightened due to public concern surrounding USPS's ability to manage the surge in mail-in voting for the November 2020 election.  *Id.*  However, shortly after assuming office, news reports indicated that Mr. DeJoy directed USPS to undertake various operational changes that could lead to slowed mail delivery.  *Id.*

American Oversight is a nonpartisan nonprofit "primarily engaged in disseminating information to the public."  Compl. ¶ 5, ECF No. 1.  It describes its mission as "promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials."  *Id.*  On July 29, 2020, it submitted a FOIA request to USPS, requesting "[a]ll calendars or calendar entries for Louis DeJoy including any calendars maintained on behalf of Louis DeJoy, from June 15, 2020 through two weeks after the date the search is conducted."  USPS's Statement Material Facts as to Which There Is No Genuine Issue ("USPS's SMF") ¶ 2, ECF No. 14-1.  This dispute centers on USPS's response.

USPS initially claimed that it had no relevant records, admitting that while the requested calendar existed, Mr. DeJoy's calendar and calendar entries were not agency records subject to the FOIA because they were only for "personal use."  Compl. Ex. B ("Aug. 7, 2020 Letter to American Oversight") at 1, ECF No. 1.  But after American Oversight brought this lawsuit, the agency changed course and produced a 155-page version of Mr. DeJoy's calendar for the period

between June 15, 2020 to November 7, 2020 as responsive to the request.  *See* Declaration of

Janine Castorina ("Castorina Decl.") ¶ 13, ECF No. 14-2.  The released calendar is heavily

redacted, leaving visible almost no substantive information.  USPS represents that the redacted

information primarily concerns the meeting subject matter line and attendee information for each

calendar entry.  *Id.* ¶ 13.

UPS justifies these redactions across a variety of FOIA exemptions.  These include

Exemption 3 for "information of a commercial nature . . . that under good business practice

would not be publicly disclosed" pursuant to the Postal Reorganization Act ("PRA"), Exemption

5 for information subject to the deliberative process or attorney-client privilege, Exemption 6 for

information "of no legitimate public interest," concerning Mr. DeJoy's security detail, travel, and

leave time for both himself and subordinates, as well as the identity of successful job applicants,

and finally Exemption 7(c) for law enforcement information.  *Id.* ¶¶ 14–24; *see also* Pl.'s

Statement Material Facts as to Which There Is No Genuine Issue ("Pl.'s SMF") ¶ 6, ECF No. 19-

2.  As Ms. Castorina's declaration explains, USPS has declined to provide a *Vaughn* index

justifying its redactions and has instead determined that these FOIA exemptions apply across

twelve distinct categories of the 1,024 meetings on the Postmaster General's calendar.  Castorina

Decl. ¶ 26.  These categories include: (1) strategy meetings with subordinates; (2) meetings with

the USPS Board of Governors; (3) legal meetings; (4) meetings with other federal executive

agencies and offices; (5) meetings with industry; (6) meetings with labor representatives; (7)

meetings with the USPS Office of Inspector General; (8) meetings and preparations for meetings

with Congress; (9) employment interviews; (10) subordinate leave and travel; (11) awards

ceremonies; and (12) security detail and appointment information.  *Id.*  USPS does not label each

specific redacted calendar entry to indicate what specific information is being withheld under

which exemption, but instead relies on these generalized categories discussed in the agency's declaration. *Id.* ¶ 87.

Arguing that it has met its FOIA obligations, USPS now seeks summary judgment. *See* Def.'s Mem. P. & A. Supp. Cross-Mot. Summ. J. ("Def.'s Mot."), ECF No. 14; *see also* Def.'s Opp'n Pl.'s Mot. Summ. J. & Reply Supp. Mot. Partial Summ. J. ("Def.'s Reply"), ECF No. 21. It supports its motion with a declaration from Janine Castorina, the Chief Privacy and Records Management Officer for USPS. The declaration describes in general categorical terms the information withheld and the agency's reasoning for applying the various exemptions at issue. *See generally* Castorina Decl. American Oversight also requests that the Court grant summary judgment in its favor. It argues that USPS has impermissibly redacted materials from Mr. DeJoy's calendar that do not fit within the exemptions the agency claims. *See* Pl.'s Mot.; *see also* Pl.'s Reply Supp. Cross-Mot. Summ. J. ("Pl.'s Reply"), ECF No. 23.

### III.  LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). In doing so, FOIA is designed "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

Accordingly, the statute "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "Consistent with the Act's goal of broad disclosure," those

exemptions should be "given a narrow compass." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).  "The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).  In addition, an agency that properly claims an exemption must "demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003); *see also* 5 U.S.C. § 552(b).

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008).  Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  An agency may show that it is entitled to summary judgment by submitting affidavits that, in "reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  An agency's justification for withholding records "is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 375 (D.C. Cir. 2007)).

## IV.  ANALYSIS

USPS heavily redacted the requested calendar records under four exemptions.  *See* Castorina Decl. ¶¶ 14, 19, 24, 25.  But American Oversight directly challenges the application of only three: the calendar entries redacted under Exemption 3, Exemption 5, and one category of redactions under Exemption 6 concerning Mr. DeJoy's interviews with successful job applicants. Pl.'s Mot. at 6.  Examining each exemption in turn, the Court determines that USPS has not provided the Court with enough information to show it has properly redacted information under Exemption 3 and Exemption 5.  Given these explanatory deficiencies, the Court will allow the agency to try again to justify the exemptions it says are applicable.  The Court will, however, grant summary judgment in favor of American Oversight regarding the records pertaining to Mr. DeJoy's job interviews with successful applicants withheld under Exemption 6.

### A.  FOIA Exemption 3

USPS begins by arguing that the majority of its calendar entry redactions are proper under Exemption 3, as they contain information of a commercial nature that would not be disclosed under good business practices.  Def.'s Mot. at 13.  Exemption 3 allows an agency to withhold records "specifically exempted from disclosure by statute," provided that the statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  For this exemption, then, USPS must "show that the statute claimed is one of exemption[s] as contemplated by Exemption 3 and that the withheld material falls within the statute."  *Larson*, 565 F.3d at 865 (citing *Fitzgibbon v. C.I.A.,* 911 F.2d 755, 761–62 (D.C. Cir. 1990)).

USPS relies on the Postal Reorganization Act ("PRA"), which specifically exempts from disclosure under FOIA "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed."  39 U.S.C. § 410(c)(2).  This provision of the PRA was "designed to make USPS function more like a modern, competitive business."  *DBW Partners, LLC v. United States Postal Serv.*, No. 18-cv-3127, 2020 WL 2064082, at *5 (D.D.C. Apr. 28, 2020) (citing *Am. Postal Workers Union AFL-CI v. U.S. Postal Serv.*, 742 F. Supp. 2d 76, 82 (D.D.C. 2010)).  American Oversight does not dispute that the PRA is a withholding statute under Exemption 3.  Pl.'s Mot. at 10.  This conclusion has also been reached by courts that have considered the issue.  *See e.g., Braun v. USPS*, 317 F. Supp. 3d 540, 549 (D.D.C. 2018); *Am. Postal Workers*, 742 F. Supp. 2d at 81–83; *Airline Pilots Ass'n, Int'l v. USPS*, No. 03-cv-2384, 2004 WL 5050900, at *5 (D.D.C. June 24, 2004).

American Oversight does, however, take issue with USPS's assertion that all of the material withheld under this exemption falls within the parameters of the PRA because it is "commercial" in nature.  Pl.'s Mot. at 10.  As a result, the Court will turn its focus to whether the information in question has been properly classified as "commercial."

"[O]nce [a] court is satisfied that the statute is in fact an Exemption 3 withholding statute[,]" "it may be proper to give deference to an agency's interpretation of what matters are covered by a statute."  *Reps. Comm. for Freedom of Press v. U.S. Dep't of Just.*, 816 F.2d 730, 735 n.5 (D.C. Cir. 1987) *rev'd on other grounds*, 489 U.S. 749 (1989); *see also Citizens for Resp. & Ethics in Washington v. United States Postal Serv.*,  No. 20-cv-2927, 2021 WL 3662843, at *4 (D.D.C. Aug. 17, 2021) (applying USPS's own regulations to determine if record constituted commercial information under the PRA).  USPS's regulations define commercial

information as "relat[ing] to commerce, trade, profit, or the Postal Service's ability to conduct

itself in a businesslike manner" and provide a set of six additional, non-determinative factors for

determining whether information is commercial.  39 C.F.R. § 265.14(b).  As USPS itself

explained, the Postal Service considers these factors to determine "whether the information [at

issue] is more akin to its role as a business entity, a competitor in the market, or a provider of

basic public services."  Castorina Decl. ¶ 16.  The first five factors weigh in favor of

withholding, inquiring as to whether the information: (1) "[r]elates to products or services

subject to economic competition, including [certain products and services offered by USPS]"; (2)

"[r]elates to the Postal Service's activities that are analogous to a private business in the

marketplace"; (3) "[w]ould be of potential benefit to individuals or entities in economic

competition with the Postal Service, its customers, suppliers, affiliates or business partners, or

could be used to cause harm to a commercial interest of the [same]"; (4) "[i]s proprietary or

includes conditions or protections on distribution and disclosure, is subject to a nondisclosure

agreement, or a third party otherwise expressed an interest in protecting such information from

disclosure"; (5) "[i]s the result of negotiations, agreements, contracts or business deals between

the Postal Service and a business entity."  The sixth factor, however, weighs in favor of

disclosure, asking whether the information "[r]elates primarily to the Postal Service's

governmental functions or its activities as a provider of basic public services." 39 C.F.R. §

265.14(b)(3)(i).  This is "presumably because such information is subject to public inspection,

unlike the types of commercial information that must be withheld to protect USPS's business

interests." *Citizens for Resp. & Ethics in Wash.*, 2021 WL 3662843, at *4.  The Court will

review USPS's use of this framework to determine if the calendar entries at issue were properly

withheld.

1.  USPS's Analysis of Whether the Redacted Calendar Entries Constitute "Commercial Information" Under the PRA is Flawed

USPS makes several arguments for why the vast majority of Mr. DeJoy's calendar entries fall within the PRA's definition of "commercial information," asserting that it meets this definition under both the "ordinary" definition of the term as well as the USPS's regulations interpreting this statutory provision.  Def.'s Mot. at 14.  The disclosure of such sensitive information, according to USPS, "would aid USPS's competitors and harm the Postal Service's ability to compete in the private marketplace" because it "would reveal the Postmaster General's strategic priorities, the identities of his key counselors and their areas of responsibility, details about his negotiations with potential customers and partners, the frequency and nature of discussions with labor union representatives, subject matter discussed with his legal counsel, and various other sensitive information that no private enterprise would ever publicly reveal under best practices."  Def.'s Mot. at 1.[1]

Unsurprisingly, American Oversight takes issue with these assertions.  First, to be clear, American Oversight does not seem to dispute the appropriateness of all of the redactions made by USPS under this exemption, asserting instead that they have been applied in an overbroad manner and without the necessary segregability analysis.  Pl.'s Mot. at 16–17.  American

---

[1] At times USPS seems to raise the argument that the calendar as a whole is commercial and can be withheld in its entirety because it "shows how USPS's top executive allocates his time, what areas of [the] business and operations command his attention and constitute his priorities . . . and provides a five-month window into USPS operations at the highest level."  Def.'s Mot. at 14 (continuing on to describe how release of calendar would reveal "the subject matter of commercially sensitive meetings and negotiations, the timing of such meetings or series of meetings, and the identities of the Postmaster General's chief confidants in different areas of USPS operations.").  However, the argument is explicitly disclaimed by the agency later in the briefing.  See Def.'s Reply at 14 n.7.  As a result, the Court declines to address this argument.

Oversight first questions USPS's "unsupportable" assumption that if a meeting in any way "purportedly concerned matters that affect USPS's commercial enterprise, even the title, subject, and attendees of the meeting themselves necessarily reveal commercial information." *Id.* at 18. It also points out that USPS frequently resorts to speculative language that the release of this limited meeting information "might" or "would potentially" disclose confidential commercial information. *Id.* Finally, it disputes the veracity of USPS's claim that none of Mr. DeJoy's meetings from his first five months in office "related primarily to the Postal Service's governmental functions or its activities as a provider of basic public services." *Id.* at 22. The Court largely agrees with American Oversight's critiques, as it explains in more depth below.

Far and away the most troubling part of USPS's commercial information analysis is with respect to its assertions surrounding the sixth factor of whether the calendar entries at issue "relate[] primarily to the Postal Service's governmental functions or its activities as a provider of basic public services." 39 C.F.R. 265.14(b)(3)(i)(F). USPS's interpretation of how this factor should be considered is so limited it directly contravenes the express purposes of FOIA and runs afoul of the agency's own regulations.

USPS asserts that during the first five months of Mr. DeJoy's tenure—dating from June 15, 2020 to November 7, 2020—he did not attend a single meeting that primarily concerned the Postal Service's governmental functions or activities as a provider of basic public services. Def.'s Reply at 12. This is despite the fact that Mr. DeJoy himself stated in August of 2020 that the agency's "number one priority" at the time was the delivery of election mail[2] (which is indisputably a basic public service), and other items of this nature almost certainly on Mr.

---

[2] News Release, USPS, *Postmaster General Louis DeJoy Statement*, Aug. 18, 2020, https://about.usps.com/newsroom/national-releases/2020/0818-postmaster-general-louis-dejoystatement.htm.

DeJoy's agenda included voting rights litigation focused on this same issue,[3] discussions with the Department of Treasury and Congress regarding emergency public funding for USPS,[4] ongoing ethics inquiries concerning Mr. DeJoy's purported conflicts of interest,[5] government mailings on the ongoing coronavirus,[6] and the potential use of prescription drug cards to be sent to seniors through the mail.[7]

The Court gathers that USPS is able to reach the extraordinary conclusion that no such meetings were scheduled on Mr. DeJoy's calendar (even in the face of such contemporaneous evidence) due to the extreme definition it employs as to what constitutes governmental functions or basic public services.  USPS posits that "even meetings touching upon matters of public concern are *likely* to be inextricably intertwined with commercially-sensitive information related

---

[3] Luke Broadwater et al., *Postal Service Warns States It May Not Meet Mail-In Ballot Deadlines*, N.Y. Times (Aug. 31, 2020), https://www.nytimes.com/2020/08/14/us/politics/uspsvote- mail.html; Kenneth P. Vogel et al., *Postal Service and State Officials Feud Over Mail Voting as Election Looms*, N.Y. Times (Sept. 25, 2020), https://www.nytimes.com/2020/09/16/us/politics/postal-service-mail-voting.html.

[4] *See* Jory Heckman, USPS, *Treasury Reach Agreement on $10B Coronavirus Relief Loan*, Fed. News Network (July 29, 2020, 12:23 PM), https://federalnewsnetwork.com/agencyoversight/ 2020/07/usps-treasury-reach-agreement-on-10b-coronavirus-pandemic-relief-loan/; Jacob Pramuk, *House Passes Bill to Put $25 Billion into USPS and Reverse Changes Amid Uproar*, CNBC (Aug. 23, 2020, 11:02 AM), https://www.cnbc.com/2020/08/22/usps-newshouse- passes-postal-service-funding-bill.html.

[5] Marshall Cohen, *Financial Disclosures Reveal Postmaster General's Business Entanglements and Likely Conflicts of Interest, Experts Say*, CNN (Aug. 12, 2020, 6:33 PM), https://www.cnn.com/2020/08/12/politics/postal-service-dejoy-conflicts-amazon-trades-xpostake/index.html.  Indeed, our sister court recently concluded that USPS documents "detailing DeJoy's financial disclosures, recusal and divestiture obligations, and related communications with OGE are government-specific documents regarding USPS's accountability to the public, not its business operations" and thus could not be withheld under exemption 3. *Citizens for Resp. & Ethics in Wash.*, 2021 WL 3662843, at *5.

[6] Nicholas Wu, *Trump Administration Has Not Paid USPS for COVID-10 Postcards Featuring Trump's Name*, USA Today (Sept. 15, 2020, 11:27 AM), https://www.usatoday.com/story/news/politics/.

[7] Ricardo Alonso-Zaldivar, *Trump's $200 Prescription Cards Won't Hit Mailboxes Just Yet*, AP, Sept. 26, 2020, https://apnews.com/article/election-2020-seniors-elections-prescriptiondrugs-medicare-6f2aaaf4e94a0dba12abd5b1641bbccc.

to postal rates, funding, operations, and logistics."  Def.'s Reply at 12 (emphasis added).
Consequently, the agency appears to have created an internal standard that the only calendar
entries that would fall under this category are, in its own words, those "*exclusively* addressing
matters of public concern without any corresponding commercial sensitivity."  *Id.* at 13
(emphasis added).

But this is not what the law requires.  First and foremost, USPS's own regulations direct
the agency to weigh whether the information at issue "relates *primarily* to the Postal Service's
governmental functions or its activities as a provider of basic public services."  39 C.F.R. §
265.14(b)(3)(i)(F) (emphasis added).  A "primary" relationship to matters of public concern is
less demanding than the "exclusive" relationship standard USPS attempts to create.  As
American Oversight correctly asserts, this means that where information is primarily related to
USPS's public functions, "the focus or attendees of a meeting [can] have some nexus with
commercial activities" without transforming the calendar record into protected commercial
information.  Pl.'s Reply at 9.

The error of USPS's approach also becomes clear when carried to its logical conclusion.
USPS contends, in essence, that the entirety of Mr. DeJoy's calendar is commercial information
simply because the agency is responsible for a myriad of commercial activities.  But this
approach is so broad it would swallow any FOIA obligation entirely—as demonstrated by the
fact that USPS has declined to release *any* substantive calendar entries from Mr. DeJoy's
calendar from a five-month period, even though during the period in question a number of public
interest items of national importance were on USPS's agenda.  This outcome cannot be
reconciled with the intent of Congress, which while exempting the Postal Service's commercial
information from release, notably did not exempt the agency from FOIA requirements altogether.

Nor can it be squared with the Supreme Court's repeated insistence that in light of FOIA's goals of broad disclosure, "exemptions be given a narrow compass." *Milner v. Dep't of Navy*, 562 U.S. 562, 570 (2011); *F.B.I. v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed").

Despite this fact, USPS attempts to make much of what it characterizes as "Congress's repeated exhortation that USPS operate like a private enterprise." Def.'s Reply at 5 (collecting cases). The Court does not dispute that through the PRA, Congress provided USPS "with a broad release from many FOIA disclosure requirements." *Wickwire Gavin, P.C. v. USPS*, 356 F.3d 588, 592–93. But again, this ignores the fact that unlike private enterprises, Congress determined that USPS would still be subject to FOIA—no doubt an obligation imposed in light of the USPS's public sector work funded by the public's tax dollars. *See Piper & Marbury, L.L.P. v. U.S. Postal Serv.*, No. 99-cv-2383, 2001 WL 214217, at *3 (D.D.C. Mar. 6, 2001) ("When Congress reorganized the Postal Service, it nevertheless insisted that the Postal Service remain as subject to FOIA as all other government agencies."); *see also Nat'l W. Life Ins. Co. v. United States*, 512 F. Supp. 454, 462 (N.D. Tex. 1980) ("[T]he [PRA] did not remove all semblance of a public agency from the Postal Service."). And the Supreme Court has recognized that "the Postal Service has different goals, obligations, and powers from private corporations[,]' that are instead "consistent with [its] nationwide, public responsibilities." *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 747 (2004); *see also Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1128 (9th Cir. 2007) ("Thus, under the PRA, USPS is a government entity, not a business, which provides a service, mail delivery, to the public."). The focus of American Oversight's request is centered squarely on obtaining information about just this kind of public, non-commercial role of the Postal Service. As a result, USPS's retreat to hide behind an

overbroad application of what constitutes "commercial" information is particularly unconvincing.

USPS also attempts to further limit this factor's application by refusing to disclose any meetings discussing issues of public concern where they "are *likely* to be inextricably intertwined with commercially-sensitive information."  Def.'s Reply at 12 (emphasis added).  The Court is troubled by this speculative language which would seem to imply that the agency has not actually conducted the required analysis for each entry it has redacted, contradicting its other representations to the Court.  *See* Def.'s Reply at 6 (representing that "USPS considered the six factors set out in its regulations for each entry.").  It reminds USPS that while it can properly withhold as non-segregable information that is "inextricably intertwined" with exempt data, *DBW*, 2020 WL 2064082, at *3, this determination must actually be made for each calendar entry—an argument that the standard is "likely" met is not legally sufficient.

Furthermore, the Court cautions USPS to remember that it is the substance of the calendar entries that is at issue here, not the content of the meetings themselves.  In advancing their "impermissibly intertwined" argument, USPS appears to contend that even if a meeting— not the calendar entry— touched on items of a commercial nature, it would fall into the exemption.  For the reasons described above, this is incorrect.  This also loses sight of what is actually at issue in this dispute—the simple content of the meeting and appointment entries of Mr. DeJoy's calendar.  It strikes the Court as unlikely that this basic calendar entry information could—in every instance from a five-month period during which USPS carried out critically important public responsibilities—plausibly contain content that is either of a commercial nature or content of public concern that is "impermissibly intertwined" with sensitive commercial content.  For illustrative purposes, a calendar entry titled "Mail-in Ballots" would quite

obviously concern USPS's role as a provider of public services and must be disclosed under

Exemption 3, even if the content of the meeting itself involved a discussion of commercial

information that could reasonably be withheld, if, for example, the meeting minutes were

requested.  This is because it would twist the purposes of Exemption 3 to allow USPS to

withhold information that does not even, on its face, convey any sensitive commercial content.

Furthermore, such a calendar entry would be primarily focused on "USPS's accountability to the

public, not its business operations," as the release of such information would assist in

maintaining public trust in the agency and "provide a governmental service accountable to

taxpayers who fund[] its operations."  *Citizens for Resp. & Ethics in Wash.*, 2021 WL 3662843,

at *5.

    This outcome is in accord with both USPS's regulations as well as general FOIA law.  As

this Court has previously held, USPS's "obligations under FOIA, which favors disclosure, win

out where 'information of a commercial nature' *is not directly implicated*."  *See DBW*, 2020 WL

2064082, at *11 (emphasis added) (noting that USPS cannot withhold under this exemption

information that "reflect[s] directly on 'what the government is up to'—the core of what FOIA

was designed to address") (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157,

171 (2004) (brackets omitted)).  USPS's definition would also give unprecedented breadth to the

meaning of "commercial" information, directly contravening both USPS's own regulations,

designed to give the definition a "narrow[]" construction, 83 Fed. Reg. 48,233–34 (Sept. 24,

2018), as well as the general directive that Exemption 3 statutes are to be interpreted to only

withhold "highly specific, limited categories of information" so as to minimize the risk of

"erroneously withholding information Congress wished disclosed." *Ass'n of Retired R.R. Workers v. R.R. Ret. Bd.*, 830 F.2d 331, 334 (D.C. Cir. 1987)."[8]

In sum, the Court concludes that there were fundamental errors committed by USPS when evaluating calendar entries that involved the agency's public responsibilities and duties. As USPS itself has explained, the six relevant factors must be used to consider "whether the information [at issue] is more akin to its role as a business entity, a competitor in the market, or a provider of basic public services." Castorina Decl. ¶ 16. The Court is not convinced this actually occurred, and as a result directs USPS to reevaluate its current redactions to comply with the standard articulated above and provide an updated declaration to the Court if it wishes to continue to withhold these records from disclosure.

## B. Exemption 5

FOIA's fifth exemption covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption protects documents that would be privileged in ordinary civil litigation, *see Loving*, 550 F.3d at 37, such as under the deliberative process or attorney client privileges. USPS invokes both here.

USPS seeks to withhold a "narrower" set of calendar entries under Exemption 5 compared to those it seeks to redact under Exemption 3. These include calendar entries that are

---

[8] USPS also repeatedly justifies its redactions on the basis that this information would not be disclosed under good business practices by a private company. *See e.g.,* Def.'s Reply at 16 ("[I]t is hard to imagine when it would ever be a good business practice for a private enterprise to voluntarily release the personal calendar of its top executive."). But this is the second part of the statutory inquiry under PRA, and generally irrelevant to the main question at issue of whether the calendar entries are commercial, given "[t]hat it may not be good business practice to disclose the information requested does not, by itself, make it commercial in nature." *Carlson*, 504 F.3d at 1130.

described by USPS as falling within four general categories: strategy meetings with
subordinates, meetings with the USPS Board of Governors, legal meetings, and meetings with
other federal executives and agencies.  Def.'s Mot. at 22 n.9.  USPS justifies these withholdings
by explaining that these calendar entries include either: "(1) detailed meeting descriptions
describing the subject matter or goal of a meeting, including subject matter on which the
Postmaster General sought legal advice; (2) meeting attendee information that is likely to
identify the subject matter of a meeting, chill candid deliberations, or undermine the attorney-
client privilege; or (3) timing information about certain meetings, or series of meetings, where
disclosure would reveal deliberative details about those meetings."  *Id.* at 22 (citing Castorina
Decl. ¶¶ 19–23, 30–31, 35–36, 40–43, 47).  All of these calendar entries were originally withheld
pursuant to Exemption 3.  Def.'s Mot. at 22.

1. Deliberative Process Privilege

USPS invokes the deliberative process privilege by arguing that "[r]eleasing this
information, in addition to revealing the Postmaster General's key strategic priorities, would
divulge information about the mechanics of the Postal Service's internal deliberations
concerning operations, policies, and business strategies . . . . [and] would also chill the
Postmaster General's counselors and other subordinates from offering candid advice."  Def.'s
Mot. at 2.  American Oversight responds by asserting that USPS's has failed to provide the
required evidence to explain why each calendar entry at issue is covered by the privilege,
creating a "potentially limitless application that could swallow whole the very purpose of the
FOIA."  Pl.'s Mot. at 33.  The Court agrees that there are fundamental problems with the way in
which USPS attempts to apply this privilege, which it details below.

The deliberative process privilege is designed "[t]o protect agencies from being 'forced to operate in a fishbowl.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).  In recognition "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," the privilege "shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* (first quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); and then quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

To properly invoke the deliberative process privilege, a document must be both predecisional and deliberative.  *See id.* at 785–86; *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 512 (D.C. Cir. 2011).  "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made."  *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)).  It is deliberative if "it reflects the give-and-take of the consultative process."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

USPS runs into a fundamental problem from the start.  In its own words, "To establish that a document is protected by the privilege, the agency need[s] . . . [to] establish *what deliberative process is involved*, and the role that the documents at issue played in that process."  Def.'s Mot. at 23 (quoting *Jud. Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (internal quotations omitted) (emphasis added)); *see also Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (same).  "In addition to explaining the 'function and significance

of the document(s) in the agency's decisionmaking process,' the agency must describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents.'" *Elec. Frontier Found. v. U.S. Dep't of Justice ("EFF")*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)).  But USPS does not do any of these required tasks.  It provides only the most general descriptions of what these calendar entries could contain—stating that the redacted meetings with subordinates concern "Postal Service business, services and products, and processes and procedures."  Castorina Decl. ¶ 31.  For the calendar entries related to meetings with the Board of Governors, USPS provides only that they "concern deliberations at the highest level."  *Id.* ¶ 36.  Legal meetings were "for purposes of obtaining legal advice."  *Id.* ¶ 41.  And "meetings with federal agencies," *id.* ¶ 44 "are predecisional and deliberative in nature," *id.* ¶ 47.  Noticeably absent from all of these descriptions is any semblance of an identification of a specific deliberative process at issue, how these calendar entries contributed to said deliberative process, or any explanation of who issued these calendar entries and their position in the chain of command.

Oddly, USPS recognizes it bears the burden to identify "[t]he deliberative process to which the withheld calendar details relate" Def.'s Reply at 23, but seems to think the perfunctory and extremely generic explanations given above combined with the vague statement that the redacted entries "describe[] information about future meetings where policy and strategy is in the process of being formulated," *id.* (citing Castorina Decl. ¶ 30), meets this burden.  It does not. Indeed, agency explanations that have provided *far* more detail about the underlying deliberative processes at issue have been found inadequate in this regard.  *See, e.g., Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 306–07 (D.D.C. 2013) (finding agency description of withheld email

exchange that stated the record "contains deliberative and pre-decisional comments between two U.S. government agencies on a specific and contentious aspect of the technical service agreements negotiations" failed to identify the required "specific" deliberative process to which the record contributed); *Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 68 (D.D.C. 2013) (finding declaration that described a specific document as "report[ing] on the status of the agreement with another country and refers to earlier negotiations with Mexico . . . . provid[ing] data on the country's economy, as well as other estimates relevant to the status of the negotiations. . . [i]t reports on totalization agreements recently signed . . .," which did not make clear "to which deliberative process this document may have contributed or pertained"); *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 77 (D.D.C. 2012) (dismissing as inadequate document description that "DOE personnel apparently discussed 'the Vogtle Project'" as "this clearly fails to provide the Court with anything to go on when it comes to evaluating the agency's actions in redacting information within that record."); *EFF*, 826 F. Supp. 2d at 168 (dismissing as inadequate explanation that stated withheld emails "consist of back and forth discussions, forwards, and spinoff discussions, in which DOJ officials exchange any thoughts, ideas, or guidance they deem appropriate regarding the U.S.'s . . . negotiation position on HLCG matters") (cleaned up).

        In contrast to even these deficient examples, USPS does not provide even a general description of the specific subject matter of each calendar entry at issue, giving the Court only the four broad categories of the types of meeting entries it has withheld from release.  The content of these meetings—which would illuminate what deliberative process is implicated—is not provided.  As a result, the Court is not given sufficient information about the nature of the particular deliberative process(es) that may have been involved in the redacted calendar entries.

Nor is there any attempt to explain how these calendar entries relate to the overarching deliberative process (and how could it, when no deliberative process is identified).  USPS also declines to provide any specific information as to which decisionmakers were involved in the record at issue.  "Such a broad and opaque description of the deliberative process involved does not provide the Court with enough detail about whether these documents are deliberative and predecisional."  *Trea Senior Citizens League*, 923 F. Supp. 2d at 68.  Without this information, the Court cannot adequately assess if this information is indeed appropriately covered by this exemption.[9]

"The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp.2d 295, 299 (D.D.C. 1999) (quoting *Coastal States*, 617 F.2d at 867).  Without this information, the Court concludes that USPS has failed to supply, as it must, "'the minimal information necessary to make a determination' concerning applicability of the deliberative process privilege."  *Trea Senior Citizens*, 923 F. Supp. 2d at 69 (quoting *EFF*, 826 F. Supp. 2d at 173).  Accordingly, USPS is directed to either supplement its current declaration

---

[9] From the limited information at the Court's disposal, there are reasons to doubt the agency's ability to make the showing that these calendar entries are deliberative.  To be predecisional and deliberative, a withheld record will, for example, "make recommendations for policy change" or "reflect internal deliberations on the advisability of any particular course of action."  *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010).  The Court is generally unconvinced that the visibly short calendar event subject lines and attendee information USPS has redacted here would—in all but rare circumstances—reveal the substance of actual deliberations between Mr. DeJoy and his advisors.  Indeed, USPS does not attempt to argue that these calendar entries contain any substantive commentary.  *See* Castorina Decl. ¶ 31 (describing how these calendar entries provide "details about meetings" including "subject-matter, timing, and attendees").  Simply because the calendar entries generally reference meetings in which deliberative communications occurred or identify the general subject matter of said meetings does not (without more) make the calendar entries themselves deliberative.

to correct these shortcomings and explain why Exemption 5 applies to each calendar entry, or alternatively, it may select to disclose the calendar entries withheld under this exemption.

2.  Attorney-Client Privilege

USPS has also redacted "a narrow subset of calendar entries concerning meetings between the Postmaster General and his attorneys" pursuant to the attorney-client privilege under Exemption 5.  Def.'s Mot. at 30; *see also* Castorina Decl. ¶¶ 22–23, 40–43.  American Oversight argues that the application of this exemption is in error, contending that "USPS has done little more than repeat the elements of the attorney-client privilege, without providing any specificity, which is insufficient to carry the burden to assert the privilege[.]"  Pl.'s Mot. at 44.  The Court agrees that the rationale provided for these redactions is deficient.

"The attorney–client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services.  The privilege also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."  *Tax Analysts*, 117 F.3d at 618.  The government must still prove, however, with "detailed and specific information," that the withheld information falls within the attorney–client privilege.  *See Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999).  To show that the privilege applies here, USPS must demonstrate:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client.

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012)

(citing *In re Sealed Case*, 737 F.2d at 98–99).

      USPS asserts that select, unspecified, calendar entries meet these requirements because

"the Postmaster General and USPS are clients," "the information at issue concerned

communications between the Postmaster General and [his agency] attorneys," "the calendar

entries contained facts sent to counsel for purpose of securing legal advice," and "the privilege

has been claimed and not waived."  Def.'s Reply at 29; Def.'s Mot. at 30–32.  No further

specifics are provided, except for a vague statement in the agency's declaration that the calendar

entries "concerned facts, policies, plans and proposals" Def.'s Mot. at 31, and that "some" of the

subject lines of these calendar entries "could" reveal legal advice or topics discussed, Castorina

Decl. ¶ 42.  This basic recitation of the required elements (with a dose of vague speculation

thrown in for good measure) cannot meet USPS's burden here, for as this Court has instructed in

the past, an agency "may not 'offer nothing more than conclusory assertions and blanket

affirmations' to support its use of the attorney–client privilege."  *Hunton & Williams LLP v. U.S.*

*Env't Prot. Agency*, 248 F. Supp. 3d 220, 254–55 (D.D.C. 2017) (cleaned up) (citing *Cuban v.*

*SEC*, 744 F. Supp. 2d 60, 79 (D.D.C. 2010)).  "At the very least, the [agency] must describe with

some reasonable level of detail the nature of the legal issue or issues for which advice was being

sought and whether the withheld [records] seek legal advice, convey legal advice, or both."

*Muttitt*, 926 F. Supp. 2d at 309; *see also Hunton & Williams LLP*, 248 F. Supp. At 255 (requiring

explanation of "the identities of the client and lawyer").  USPS has not done so here.  The agency

has declined to provide any calendar entry specific details about the type or nature of the legal

advice at issue.  *See Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 350

(D.D.C. 2018) ("Under the general rule, the attorney-client privilege does not protect from

disclosure . . . the general purpose of the work performed.") (internal quotation marks omitted).

USPS has also fully redacted all of the attendee information, meaning the Court is in the dark

regarding the specific attorneys purportedly giving this legal advice.[10]

In light of these explanatory deficits, the Court cannot meaningfully review whether these

records meet the required elements to qualify as attorney-client communications and are indeed

privileged.  The Court needs more than the conclusory statements USPS has provided thus far.

As a result, USPS is again directed to either supplement its current declaration to address these

shortcomings, or alternatively is free to elect to release the information withheld under this

exemption.

### C.  Exemption 6

Exemption 6 provides that an agency may withhold from disclosure under a FOIA

request "personnel and medical files and similar files the disclosure of which would constitute a

clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of this

exemption is "to protect individuals from the injury and embarrassment that can result from the

---

[10] The Court does not dispute USPS's assertions that in limited instances it is appropriate for an agency to withhold under this exemption certain details such as the subject of a meeting with legal counsel or even the specific attorneys invited to the meeting, if such information would "reveal the client's motivation in seeking legal advice."  *Pub. Citizen, Inc. v. United States Dep't of Educ.*, 388 F. Supp. 3d 29, 42-43 (D.D.C. 2019).  But in order for the Court to reach this conclusion, it first needs significantly more information about the underlying calendar entries in dispute.  Indeed, in the case USPS relies on, where an email subject line and the agency attorneys' names were determined to be properly redacted, the agency had provided the court with the explanation that the email chain at issue contained "deliberations and attorney/client consultations regarding potential lists of external invitees to a Departmental event."  *Id.* at 42. The Court also reviewed the document *in camera.  Id.*  No such explanation is present here, where all USPS has provided is the extremely vague, overarching description that these select calendar entries "concerned facts, policies, plans and proposals" and "*often* included information concerning negotiations with third parties, descriptions of strategy, topics of conversation, and details about other attendees."  Def.'s Mot. at 31 (emphasis added).  This is just not enough specific information for the Court to properly ascertain if the privilege applies.

unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). When evaluating this exemption, courts consider the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* at 46 (brackets and internal quotation marks omitted) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)).

USPS invokes this exemption to redact a variety of information from Mr. DeJoy's calendar that it contends is private. American Oversight takes issue with only one category of redactions, arguing that USPS must disclose "the identities of job candidates that interviewed with the Postmaster General who were eventually hired by USPS." Pl.'s Mot. at 45. USPS initially objected to this disclosure on the grounds that applicants have a significant privacy interest due to the risk of adverse consequences from their current employer if it was disclosed they were looking for other positions—a clearly non-existent concern for *successful* applicants that are currently employed with USPS. Castorina Decl. ¶ 69. USPS then pivoted in its briefing to argue that the simple fact a successful applicant had an interview with Mr. DeJoy warrants the application of a privacy interest, which should not be disturbed because American Oversight "has not explained how this information would contribute to the public's understanding of Post Service operations, as required under Exemption 6." Def.'s Reply at 30. The Court is not convinced.

The Court begins its balancing analysis with the successful job applicants' privacy interests.  It is generally well-accepted that federal employees do not have a reasonable expectation of privacy in their titles or aspects of a successful job application.  *See, e.g., Core v. U.S. Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984) (balancing the "slight infringement" of a successful job applicant's privacy against the public's "interest in the competence of people [USPS] employs and in its adherence to regulations governing hiring" to conclude that exemption 6 did not apply); *Nat'l W. Life Ins. Co. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) ("It cannot be seriously contended that postal employees have an expectation of privacy with respect to their names and duty stations. The names and addresses of the employees of virtually every other federal agency are disclosable, and in fact, many are routinely published and made available through the Government Printing Office."); Dep't of Justice Guide to the Freedom of Information Act, Exemption 6 at 23 & nn.83–84 (Oct. 9, 2019) ("Civilian federal employees who are not involved in law enforcement or sensitive occupations generally have no expectation of privacy regarding their names, titles, grades, salaries . . . or regarding the parts of their successful employment applications that show their qualifications for their positions."). Perhaps in recognition of the limited privacy interest in federal employment, USPS tries to argue (without any real explanation) that the mere fact a successful job applicant interviewed with the Postmaster General implicates their privacy concerns.  Def.'s Reply at 30.  The Court would instead characterize the interview as simply part of an applicant's successful employment application, which as described above carries a limited privacy interest.

Balanced against this weak privacy interest is the public's "interest in the competence of people [USPS] employs and in its adherence to regulations governing hiring."  *Core,* 730 F.2d at 948.  American Oversight asserts such an interest here, noting that there have been reports that

Mr. DeJoy hired a number of individuals from his former company, which is also under federal investigation for alleged campaign finance violations allegedly carried out at Mr. DeJoy's behest. Pl.'s Reply at 24-25 n.17 (citing news articles).  This is consequently a significant public interest that would urge in favor of disclosure, as it directly implicates USPS operations and "what the[] government is up to," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33–34 (D.C. Cir. 2002), at the highest levels of the agency, as well as potential government impropriety, *Favish*, 541 U.S. at 174.[11]

Consequently, after balancing the competing interests, the Court finds that Exemption 6 does not apply to Mr. DeJoy's calendar entries concerning successful USPS job applicants.  The Court will therefore deny USPS's summary judgment and grant American Oversight's motion for summary judgment as to this issue under Exemption 6.  To the extent this information is not also withheld pursuant to Exemption 3, USPS is ordered to release Mr. DeJoy's calendar entries pertaining to successful job applicants.

### D.  USPS's Categorical Redactions

The final issue the Court will address is that of USPS's categorical approach to explaining the basis for the claimed exemptions.  Typically, FOIA requires an agency to indicate the particular exemption claimed for each withheld document or redacted item.  5 U.S.C. 552(b); *see also Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)

---

[11] USPS's invocation of *Neary v. FDIC* to justify the withholding of information concerning calendar entries for interview appointments for successful job applicants is easily distinguished from this case.  In *Neary,* the plaintiff sought the name and address information for every applicant (successful and unsuccessful) in the history of a government program, arguing it was necessary to establish the "numerosity" requirement of his class action complaint.  *Neary v. FDIC*, 104 F. Supp. 3d 52, 58 (D.D.C. 2015).  The Court summarily rejected this purported "interest," explaining that an "interest in gathering information for use in civil litigation . . . is not sufficient to give rise to a public need for the information."  *Id*.  This is in contrast to the significant public interest in play here.

(describing general FOIA requirement to identify how a "particular exemption" applies to a "particular part of a withheld document."). USPS has declined to do so here, arguing that doing so would pose a security risk to Mr. DeJoy. Castorina Decl. ¶¶ 80–84.[12] The agency asserts that such an explanation "would publicly reveal timing details about the Postmaster General's movement over a five month period" which "could permit an individual to detect patterns and routines in the Postmaster General's movement, which could jeopardize the safety and security of the Postmaster General." *Id*. ¶¶ 82–83. It emphasizes the purported immediacy of this concern by noting the peaceful protests that occurred outside of Mr. DeJoy's home in Washington D.C. in the Fall of 2020, following public outcry regarding the Postal Service's approach to handling mail-in voting for the 2020 election. *Id*. ¶ 84.

The Court does not find the agency's argument convincing. While it certainly does not take Mr. DeJoy's security needs lightly, these concerns must be balanced against the interests of public transparency and disclosure protected under FOIA. This purported security rationale falls short for a number of reasons. First, the five-month calendar at issue is now almost over a year old, making any details of Mr. DeJoy's personal movement likely out of date. And based on the court's review of the heavily redacted calendar, Mr. DeJoy's daily schedule is not consistent, nor

---

[12] USPS also points out that the D.C. Circuit has "blessed" the "'category-of-document' approach" it has adopted here. Def.'s Reply at 31 (citing *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1088). But the Circuit made sure to caveat this allowance, noting that this method is acceptable only "so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied." *CREW*, 746 F.3d at 1088 (citing *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994)). The Circuit continued on to limit this approach further by stating it can only be used "when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied." *Id*. (citing *Nation Mag., Washington Bureau v. U.S. Customs Serv*., 71 F.3d 885, 893 (D.C. Cir. 1995)). As already described, the categorical approach has *not* provided the Court with enough information to properly ascertain if several of the exemptions are properly applied.

does it reveal easily discernable routines or patterns.  Moreover, USPS describes a risk that would arise from "provid[ing] details about the Postmaster General's personal movement, his leave, his travel, and his security detail" as well as "the identity of the Postal Inspectors who accompany him, and where and when they meet him."  *Id.* ¶ 80.  But none of this information would be exposed by the simple labeling of each redacted entry with the exemption that applies. Keeping the critical *content* of security detail information redacted in full pursuant to Exemption 6 and 7(c)—which American Oversight does not challenge—while providing an explanation simply for which exemption is claimed would thus not unreasonably expose Mr. DeJoy to risk.

This conclusion is reinforced by the somewhat questionable history of USPS's proffered explanation for this type of redaction in this litigation.  As this Court has previously explained, "inconsistency in an agency's explanations . . . may be indicative of bad faith and may be a reason to deny summary judgment to the Government in a FOIA case."  *DBW*, 2020 WL 2064082, at *9 (collecting cases).  As the Court has already detailed, USPS has cycled through several different explanations for the withholding of the requested calendar at issue.  The agency first claimed that Mr. DeJoy's calendar was exempt from FOIA as an "entirely personal record," before changing tact and arguing that a multitude of exemptions applied.  But even in the initial explanation provided to American Oversight explaining the exemptions claimed after the agency agreed to release the calendar, USPS did not assert that any redactions would be applied under Exemption 7(c), the now-proffered security rationale used to justify the decision to withhold an explanation for each redaction.  *See* Dec. 15, 2020 Letter to American Oversight at 1–2, ECF No. 14-2.  The late addition of this claimed exemption—seemingly only to prevent the release of specific explanations for the redacted entries—raises doubts about the importance of this argument.

USPS contends that requiring the labeling of its redactions "offers no additional explanation or detail about the asserted Exemptions," Castorina Decl. ¶ 87, in effect arguing that American Oversight is not prejudiced by the categorical approach.  The Court disagrees. Labeling of each redaction would provide helpful insight that is currently lacking, such as how many redactions have been applied under each exemption.  This information goes toward the overall reasonableness of the agency's withholdings.

This critique by USPS does point out, however, how this update will not cure the overall informational deficiencies identified by the Court elsewhere in this opinion.  As a result, the Court will require USPS to also submit a Vaughn Index.  "A Vaughn index is an affidavit that specifically describes the withheld or redacted documents and justifies, in detail, why each withheld record that would be responsive to the request is exempt from disclosure under FOIA." *Campaign for Responsible Transplantation v. U.S. Food & Drug Admin*., 180 F. Supp. 2d 29, 32 (D.D.C. 2001) (citing *King v. U.S. Dep't. of Just.*, 830 F.2d 210, 223-24 (D.C. Cir. 1987)). While an agency does not necessarily need to produce a Vaughn Index in every FOIA suit, the Court believes it is necessary in this case given the lack of specificity provided by the agency declarations.  *See, e.g. Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 126 (D.D.C. 2019) (requiring submission of Vaughn Index where agency declarations did "not at any point speak with more particularity about the nature of the redactions applied to records" at issue).  Accordingly, the Court directs USPS to, in addition to making the various addendums to the agency declarations described above, update the redactions to indicate which exemption applies to each calendar entry and produce a Vaughn Index of the calendar entries contained in Mr. DeJoy's calendar.

### E.  Next Steps

For all the reasons detailed above, the Court concludes that USPS has failed to meet its burden under FOIA.  In this situation, FOIA provides courts "a host of procedures" to determine whether records should be turned over, including discovery, further agency affidavits, and *in camera* review of the records in question.  *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980), *abrogated on other grounds by Founding Church of Scientology of Wash., D.C., Inc. v. Smith*, 721 F.2d 828, 830–31 (D.C. Cir. 1983).  The Court believes the latter two options are appropriate here, due to the fact that only a single, roughly 150-page document is at issue.  *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 82-83 (D.D.C. 2008) (stating that *in camera* review is appropriate where agency affidavits are deficient with respect to segregability analysis and relatively few number of documents are at issue); *Graham v. Mukasey*, 247 F.R.D. 205, 207 (D.D.C. 2008) (stating that in camera review is appropriate "where the record is vague or the agency claims [are] too sweeping") (citing *Weissman v. CIA*, 565 F.2d 692, 698 (D.C. Cir. 1977)).  *Cole v. DOJ*, No. 05-cv-674, 2006 WL 2792681, at *5 (D.D.C. Sept. 27, 2006) (finding *in camera* review appropriate where "the affidavit is insufficiently detailed to permit meaningful review of exemption claims . . . or where the judge wishes to resolve an uneasiness about the government's inherent tendency to resist disclosure") (citations omitted).

Consequently, the Court will exercise its "broad discretion" and order that USPS submit Mr. DeJoy's calendar within thirty days for *in camera* review, with a renewed motion for summary judgment that includes an updated agency affidavit responding to this opinion, a Vaughn Index, and a redacted version of the calendar labeling each exemption.  *DBW Partners LLC v. U.S. Postal Serv.*, 2019 WL 5549623, at *10 (D.D.C. Oct. 28, 2019).  USPS's updated justifications may come in the form of new or revised agency affidavits.  American Oversight

may then file a response to these updated submissions within twenty-one days.  Accordingly, USPS's motion for summary judgment is denied, and American Oversight's motion for summary judgment is granted in part and denied in part.

## V.  CONCLUSION

For the foregoing reasons, USPS's partial motion for summary judgment (ECF No. 14) is **DENIED** and American Oversight's cross motion for summary judgment (ECF No. 19) is **GRANTED IN PART and DENIED IN PART.**  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 23, 2021                                      RUDOLPH CONTRERAS
                                                             United States District Judge